**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| ROBERT MICHAEL COLE, ET AL | CIVIL ACTION NO. 2:09-CV-06584 |
| VERSUS | SECTION: A |
| ASHLAND CHEMICAL, INC., ET AL | MAGISTRATE: 3 |

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF JOHN SPENCER

Ashland Inc., ("Ashland"), submits this Memorandum in Opposition to plaintiffs' Motion to Exclude the Testimony of John Spencer. As more fully explained below, Mr. Spencer is well qualified to render the opinions in his report; and his report and testimony are both relevant and reliable.

I.    Mr. Spencer uses facts supported by the record and sound scientific methodology to reach his conclusions

Contrary to plaintiffs' assertions, Mr. Spencer's reports and the opinions contained therein are based on sound, scientific methodology. Plaintiffs claim that Mr. Spencer engages only in a process of denial, rather than a scientific or legitimate academic endeavor. *See* R. Doc. 54-2 at p. 4. However, plaintiffs have ignored the section in all three of Spencer's reports entitled "Exposure Assessment Methodology," in which he describes the basis for his opinions and the data upon which he relies. *See* Spencer Report Cole, attached hereto as Ex. A at p.3-4; Spencer Report Neeley, attached hereto as Ex. B at p.3-4; Spencer Report Weeks, attached hereto as Ex. C at p. 3-4. Mr. Spencer relied on the following information in forming his opinions:

- a characterization of the environment in which the exposure occurred (including room size and ventilation rates);

- a characterization of the job and tasks conducted in that environment (including frequency and duration of exposures);

- a characterization of the products (including volatility);

- a review and analysis of historical exposure data collected during tasks involving the appropriate handling of the product;

- evaluation of exposure data to determine whether accepted air sampling and analytical techniques and/or modeling were used to assess the magnitude of exposures; and,

- a characterization of the relevant safety and health regulations and the associated exposure limits.  *See* Ex. A at p. 3-4; Ex. B at p. 3-4; Ex. C at p. 3-4.

Mr. Spencer used the same methodology and input data used by plaintiffs expert, Mark Nicas, for his exposure assessments except that he did not consider the use of pure benzene because the Olin Reports do not document its use as explained more fully below in Sec. III.  *See infra* Sec. III; a*nd see* Ex. A at p. 15; Ex. B at p. 14; Ex. C at p. 14; Ex. G at Declaration # 4, 6.  Additionally, he used the documented levels of benzene in Ashland toluene rather than the levels speculated by the plaintiffs' expert, Melvyn Kopstein.  *Id.*  Spencer's actual calculations are as set out in the attachment to Spencer's Declaration.  *See* Spencer Declaration, attached hereto as Ex. G.

Plaintiffs correctly point out that Mr. Spencer does not calculate exposure to pure benzene. However, plaintiffs fail to bring to the Court's attention that Spencer has not done so because the weight of the evidence shows there was no pure benzene used at the Olin facility.  As described more fully below, Spencer lends considerable discussion to this issue.  *See infra* Sec. III.; *and see* Ex. A at p. 4-7; Ex. B at p. 4-7; Ex. C. at p. 4-7.  The same is true with respect to the benzene content in

2

Ashland toluene.  *See* Ex. A at p. 15; Ex. B at p. 14; Ex. C at p. 14.  Far from ignoring inhalation exposure to pure benzene as set out by plaintiffs, Mr. Spencer addresses it in great detail.  *See* Ex. G at Declaration # 5.

Thus, Spencer's opinions are well founded in both fact and science.  He has conducted a comprehensive review of the most relevant and reliable data available.  Far from lacking a scientific methodology, Mr. Spencer used the same methodology as plaintiffs' expert, Mark Nicas, when calculating his inhalation exposure assessment.  Thus, his opinions in this regard should be admitted into evidence at trial.

II.   <u>Mr. Spencer does not testify to witness credibility or other impermissible matters</u>

Despite claims to the contrary, Mr. Spencer does not testify to the credibility of Messrs. Cole, Neeley, or Weeks.  Plaintiffs quote no language from Spencer's report that calls the veracity of Cole, Neeley, and Weeks into question.  Nevertheless, plaintiffs claim: "Mr. Spencer's report primarily concerns Mr. Spencer's opinion as to the credibility of Messrs. Cole, Neeley, and Weeks's testimony." *See* R. Doc. 54-2 p. 5.  To support this statement, plaintiffs cite to pp. 2-8, 9-12, 15 of Spencer's Original Expert Report.  *Id.* n. 15.  However a review of these pages reveals no instance where the plaintiffs' propensity for truthfulness is questioned or even mentioned.  It is true that Mr. Spencer's conclusions are different from those advocated by the plaintiffs; one would expect a defense witness to question a plaintiff's version of events.  *See United States v. State Farm Fire and Casualty Co.*, 2010 WL 3359564 at *1 (S.D. Miss. Aug. 25, 2010) ("It is a rare case in which the parties' expert witnesses will agree on how physical evidence should be interpreted.")  But Spencer never attacks the credibility of Messrs. Cole, Neeley, and Weeks.  Plaintiffs' claim to the contrary is false and unsupported  by the record.  *See* Ex. G at Declaration # 8.

Plaintiffs further claim that Spencer's testimony usurps the role of the Court in that he concludes that Olin was a sophisticated user and that manufacturers have no duty to provide safety

training.  *See* R. Doc. 54-2 at p. 7.  However, plaintiffs' argument here is incongruent and ignores the Federal Rules of Evidence.  First, plaintiffs object to Spencer's opinion that manufacturers have no duty to provide safety training by citing to a case holding that manufacturers have a duty to warn of known dangers.  The duty to warn is not the same as an employer's duty to provide safety training, so this argument is a *non sequitur*.  Furthermore, Mr. Spencer is an industrial hygienist, a field dedicated to detecting dangers and designing appropriate safety measures in the industrial sector, particularly as to employee safety.  Thus, he is well qualified to describe the traditional roles of manufacturers and employers in the industrial safety arena.

Second, plaintiffs' claim that it is improper for Mr. Spencer to testify as to Olin's status as a sophisticated user is unsupported and ignores Federal Rule of Evidence 704.  Plaintiffs cite to no statute or jurisprudence supporting their claim that the "sophisticated user" defense to be applicable as a question of law, only.  *See* R. Doc. 54-2 at p. 7.  That the doctrine exists is a matter of law, but whether it applies is a fact question.  Also, plaintiffs ignore the plain language of FRE 704 that states: "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  FED. R. EVID. 704(a).  This abolishes the per se rule against testimony regarding ultimate issues of fact. *United States v. Grote,* 632 F.2d 387, 390 (5th Cir.1980), *cert. denied,* *240 454 U.S. 819 (1981); *United States v. Miller,* 600 F.2d 498, 500 (5th Cir.), *cert. denied,* 444 U.S. 955 (1979).  As explained above, Mr. Spencer is an expert in these matters.  Thus, his testimony on this issue will be helpful to the trier of fact and should be admitted under the broad discretion granted the Court by FED. R. EVID. 703.  The possibility that Spencer's opinions may encompass an issue that could become a key point in this case should not prevent him from expressing those opinions.  Indeed, Mr. Spencer's expertise will be particularly helpful to the trier of fact.

Thus, Mr. Spencer has not expressed any improper opinions or conclusions. He does not express any opinion as to the veracity of the plaintiffs. Plaintiffs' claims that he expresses impermissible legal conclusions are unsupported. And finally, FED. R. EVID. 704(a) permits Spencer to express an opinion regarding an ultimate issue of fact. Therefore, Mr. Spencer's reports and testimony should be admitted into evidence at trial.

III.     Mr. Spencer does not ignore benzene exposure during certain tasks

Mr. Spencer does not ignore the pure benzene exposure as alleged by the plaintiffs. In fact, he specifically addresses the issue of pure benzene, and its alleged use at the Olin plant. *See* Ex. G at Declaration # 5. Mr. Spencer concludes that it is unlikely that pure benzene was used at the facility because the industrial hygiene surveys actually made during the relevant time periods make no mention of its use. *See* Ex. A at p. 4-7; Ex. B at p. 4-7; Ex. C at p. 4-7. This is contrary to the assertions of the plaintiffs but is entirely justified.

It bears noting that Mr. Spencer, along with every other expert witness in this case, is attempting to reconstruct events that occurred many years ago. Plaintiffs would have the Court believe that, because Mr. Spencer does not accept the accounts given by the plaintiffs on blind faith, his analysis is somehow flawed or unscientific. Nothing could be further from the truth. Mr. Spencer relies on contemporaneous accounts of the conditions and solvents in use at the Olin Kraft plant contained in industrial hygiene reports and internal memos generated by Olin's team of industrial hygienists. *See* Ex. A at p. 4-7; Ex. B at p. 4-7; Ex. C. at p. 4-7. These are the most reliable sources available regarding the operations and solvents in use at the plant because they are contemporaneous with the events and generated by Olin's team of trained industrial hygienists, rather than litigation driven testing made some 30-40 years after the events at issue. Far from painting a rosy picture for upper management, the reports describe serious safety issues at the Olin facility. However, they make no mention of pure benzene being used for any purpose. *See* Ex. A at

p. 5; Ex. B at p. 5; Ex. C at p. 5; *and see generally* Olin Industrial Hygiene Report dated 3/7/1974, attached hereto as Ex. D; Olin Industrial Hygiene Report dated 4/21/1976, attached hereto as Ex. E. The company was certainly concerned about benzene and would have noted its use because its industrial hygienists noted its presence as a component of the solvent known as "gunk," a product not alleged to be manufactured by Ashland. *See* Ex. A at p. 6, Ex. B at p. 6; Ex. C at p. 6, *and see* Ex. E at p. 5. In fact, Olin safety personnel reported that use of "gunk" should be strongly discouraged because of the risk of benzene exposure. *Id.* Given the concern over any solvent containing benzene, it is highly likely that Olin's safety team would have noted any presence of pure benzene in use at the company's facility.

The lack of any documented evidence of pure benzene is in contradiction to plaintiffs' claim that drums of benzene manufactured by Ashland were used at the Olin plant. Given these conflicting accounts, it was entirely reasonable that Mr. Spencer discounted the recollections of the plaintiffs and based his report on more reliable, non-litigation driven, reports by trained industrial hygienists from Olin.

Thus, far from ignoring the benzene issue, Mr. Spencer discusses it at length and arrives at a well-founded position; that pure benzene was probably not used at the Olin facility, based upon Olin records from the time. As there is scant evidence that pure benzene was used at the Olin facility, there was no need for Mr. Spencer to perform exposure calculations for the phantom chemical.

The plaintiffs are correct that Mr. Spencer did not do a dermal exposure assessment, but this is because such an assessment is wholly unreliable and has no basis in the peer reviewed literature. This is well set out in Mr. Spencer's report and he is well qualified to offer this opinion. *See* Ex. A at p. 13-15; Ex. B at p. 13-14; Ex. C at p. 13-14; Ex. G at Declaration # 3.

6

As Mr. Spencer does not ignore the plaintiffs' potential exposure to pure benzene, his opinions are based on a complete, realistic picture of the plant operations.  Thus, his opinions are reliable and should be admitted into evidence.

IV.     <u>John Spencer is well qualified to testify in this case</u>

In their final objection to Mr. Spencer, plaintiffs claim: "Mr. Spencer is not qualified to calculate Mr. Sanderson's exposure assessment."  It is unclear who "Mr. Sanderson'" may be, but he is not a party to this case.  Plaintiffs' final section appears to be a copy and paste of an argument in a previous case, which establishes that plaintiffs have made this argument as a matter of course and not truly analyzed Mr. Spencer's qualifications.   A more careful examination of Mr. Spencer's background reveals that he is eminently qualified to render the opinions contained in his report.

John Spencer holds a bachelor degree in biological sciences from the University of Maryland.  *See* Spencer CV, attached hereto as Ex. F at p. 1.  He is currently the President of Environmental Profiles, a consulting firm in Columbia, Maryland.  *Id.*  In the past, he has worked as an industrial hygienist for both the National Institute for Occupational Safety and Health ("NIOSH") and the U.S. Coast Guard.  *Id* at p. 1-2.  Mr. Spencer worked as a Team Leader/Industrial Hygienist for NIOSH from 1980-1982.  *Id.* at p. 2.  This was not a student job as implied in plaintiffs' Memorandum in Support.  *See* Doc. 42-2 at p. 11.  Mr. Spencer completed college in 1976, long before his employment at NIOSH.  *See* Ex. F at p. 1-2.

Furthermore, Mr. Spencer is a Certified Industrial Hygienist (American Board of Industrial Hygiene) and a Certified Safety Professional (Board of Certified Safety Professionals).  *See* Ex. F at p. 2.  He has served as President of the American Industrial Hygiene Association, Chesapeake Section.  Finally, he has authored several peer-reviewed articles and been engaged numerous times for speaking engagements around the country.  *Id.* at p. 6-10.

Plaintiffs misrepresent that Mr. Spencer was excluded from offering opinions on a plaintiff's exposure assessment in a case regarding fumes from an X-ray processing machine in a case identified as *Lane v. Gasket Holdings, Inc.  See* R. Doc. 54-2 at p. 10.  A cursory review of *Lane* would demonstrate, even to the untrained eye, that it was an asbestos related case involving alleged exposure on a vessel.  It had nothing to do with fumes from an X-ray processing machine.  Plaintiffs also subtly suggest Mr. Spencer was excluded in a case called *Alden v. Bayer*.  *See* R. Doc. 54-2 at p. 10.  Mr. Spencer was retained in a case called *Alder v. Bayer*, but he testified in that case.  *See* Ex. G at #10.

Lastly, plaintiffs confuse Mr. Spencer's employment at NIOSH with testifying about his work as a college intern at the National Institutes of Health.  *See* R. Doc. 54-2 at p. 11.  This is a further misguided effort to discredit him.  Plaintiffs misrepresentation of this testimony is addressed by Mr. Spencer in Declaration # 9 of Ex. G.  In short, plaintiffs once again are not accurate in their representations to the Court.

Thus, Mr. Spencer is highly qualified to render the opinions contained in his report.  *See* Ex. G at Declaration # 1,2, and 3.  He is an experienced and respected industrial hygienist with more than thirty years of experience.

V.    Conclusion

Contrary to plaintiffs' assertions, John Spencer used sound methodology in reaching his opinions.  This methodology is explained in his report and is the same methodology used by the plaintiffs' expert.  Spencer does not testify to the credibility of Messrs. Cole, Weeks, or Neeley.  He simply reaches conclusions based on the **entire** record that are different from those put forth by the plaintiffs and their experts.  Mr. Spencer does not ignore benzene exposure from certain tasks. Quite the contrary, he addresses the issue of pure benzene exposure quite extensively. Additionally, he is well-qualified to render his opinions.  Therefore, Ashland submits that plaintiffs'

Motion to Exclude the Testimony of John Spencer should be **DENIED** and Mr. Spencer be allowed to testify at trial.

Respectfully submitted,

**FRILOT L.L.C.**

*/s/ John J. Hainkel, III*

**JOHN J. HAINKEL, III – 18246**
**PETER R. TAFARO – 28776**
**ANDREW A. MAESTRI - 30606**
3700 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3700
Telephone: (504) 599-8000;
Facsimile: (504) 599-8100
E-Mail: jhainkel@frilot.com
**Counsel for Ashland Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of September, 2010, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing upon all CM/ECF registrants.

*/s/ John J. Hainkel, III*